

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00028-CV

_____

MANISH PATIL, APPELLANT

V.

ASHWINI JOSHI, APPELLEE

On Appeal from County Court Number 1
Williamson County, Texas
Trial Court No. 22-0119-POC1, Honorable Brandy Hallford, Presiding

August 10, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, Manish Patil, presents two issues challenging the trial court's *Corrected Final Protective Order* granting relief to Appellee, Dr. Ashwini Joshi.[1] He asserts (1) the evidence is legally insufficient to support inclusion of the child, A.P., as a protected person in the protective order and (2) if a remand for a new trial is ordered, the issue of attorney's

---

[1] Patil originally presented three issues in his original brief but subsequently filed an unopposed motion to partially dismiss or affirm his issue challenging the legal and factual sufficiency of the evidence to support the trial court's finding that family violence occurred and is likely to occur in the future. As such, only two issues remain for consideration.

fees and the requirement he participate in a battering intervention prevention program (BIPP) should be reconsidered in the interest of justice.[2]  We affirm.

## BACKGROUND

Patil, an engineer, and Joshi, a dentist, married in March 2016 and share a daughter, A.P., who was born in 2019.  He has always resided in Austin and Joshi resides in Leander, Texas, after moving from Chicago in January 2022.  They have kept different residences to avoid lengthy daily commutes to their respective places of employment.

According to Joshi, Patil has a long history of physically abusing her which predates the marriage.  The pattern is he apologizes profusely, and she forgives him.  An incident occurred on September 24, 2022.  Two days later, Joshi filed an application for a protective order alleging family violence in the affidavit in support thereof.  Counsel requested a two-year protective order and asked for Joshi and her daughter to be included as protected persons.  The trial court signed an ex parte protective order.[3]

Just days later, Joshi filed a petition for divorce.  The trial court held a consolidated hearing on Joshi's application for a protective order and for temporary orders in the divorce proceeding.

During the hearing, Joshi detailed numerous instances of violence Patil has inflicted on her over the years as follows:

---

[2] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001.  Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

[3] Patil has pending criminal charges for assault stemming from the incident.

2

- unexplained bouts of anger and his constant berating of her and her family;

- Patil's abuse of an ex-wife who took their two children to India and never returned; and

- inflicting injuries on himself and then blaming her, including slapping himself while holding his daughter.

Joshi recounted an incident when A.P. was three and Patil wanted to meet some friends at a brewery. Despite Joshi's reluctance to take the child out past her bedtime, they all went out. Patil and Joshi both consumed alcoholic beverages. At one point in the evening as A.P. became sleepy, Joshi asked Patil to hand her the child so she could sleep next to her on a sofa. Patil became upset and his demeanor changed. He became abusive toward her and left with the child. When Joshi went outside to check on them, she saw Patil strap A.P. into the car seat. He yelled at Joshi to leave them alone. She went back inside to collect their belongings and returned to the car. As they drove away, she told Patil they should not have accompanied him. He became angry and pulled into a parking lot. He dragged her out of the car, shook her, hit her, and took her cell phone.[4] Occupants of another vehicle nearby witnessed the incident and called police. Patil drove away with his daughter and left Joshi behind before police arrived.[5] Joshi claimed her daughter was scared during the incident. She testified the child had witnessed Patil's violent outbursts in the past which frightened her and caused nightmares.

During cross-examination, Joshi testified Patil "is a good dad" and "takes good care of [A.P.]" if he is in a good mood. She admitted she has never witnessed him

---

[4] During cross-examination, she testified Patil gave her his cell phone, but she was unable to unlock it.

[5] Police escorted her to Patil's home the next morning so she could regain possession of her daughter.

physically abuse the child but has seen him pick her up "roughly" when she wore her shoes on the sofa. She testified his behavior is progressively worsening and she fears "it will get that way with" A.P.

Patil denied committing any physical violence against Joshi but admitted they have "big" arguments. He disclosed being arrested for assault on the night bystanders called police but denied the charges and disputed all incidents of physical abuse described by Joshi in her affidavit. He portrayed her as the aggressor and claimed she acted violently when she was receiving hormone shots for IVF treatments.

His version of events on the night they went to the brewery was as follows:

- he drank two beers and the child became tired and fell asleep on his shoulder;

- he took her to the car, strapped her in the car seat, and told Joshi it was time to leave;

- he pulled into a parking lot for safety reasons because Joshi attacked him;

- he and Joshi exited the car, and she assaulted him which required him to defend himself;

- Joshi would not get back in the car so he gave her his phone, which he unlocked, so she could call an Uber; and

- he then took the child to his home where they engaged in a normal routine until Joshi picked her up the following morning.

At the conclusion of the hearing, the trial court granted Joshi a two-year protective order based on findings family violence had occurred and is likely to occur in the future. The court included A.P. in the protective order as a protected person. The trial court further ordered Patil to complete a batterer intervention prevention program (BIPP). The

4

trial court entered findings of fact and conclusions of law in support of the protective order including a finding Patil had committed family violence and would likely do so in the future.

**PENDING MOTIONS**

**MOTION TO DISMISS**

Joshi asserts this Court has no jurisdiction because the protective order is not a final order for purposes of appeal. Relying on *Daniels v. Funes*, No. 03-10-00317-CV, 2011 Tex. App. LEXIS 4642, at *5 (Tex. App.—Austin June 17, 2011, pet. denied) (mem. op.), and *Bilyeu v. Bilyeu*, 86 S.W.3d 278, 282 (Tex. App.—Austin 2002, no pet.), she asserts precedent from the Third Court of Appeals mandates dismissal because the parties allowed the protective order proceeding and the divorce proceeding to become intertwined to such a degree they must be treated as a single suit under section 81.009 of the Texas Family Code. Thus, she argues the pending divorce proceeding renders the protective order interlocutory. We disagree and deny the motion to dismiss.

The application for a protective order was filed under trial court cause number 22-0119-POC1. The divorce petition was filed several days later under trial court cause number 22-2731-FC1. Both suits were filed in the same trial court. During announcements at the consolidated hearing, counsel for Joshi declared "even though they overlap, we are having a final on the protective order and then temporary orders hearing on the divorce." He continued "I would like to hear the protective order first and bleed into the temporary order. Some of the things in the protective order will actually be part of the temporary orders, as well as far as possession and access . . . ."

Section 81.009, which became effective June 18, 2005, provides as follows:

5

(a) Except as provided by Subsections (b) and (c), a protective order rendered under this subtitle may be appealed.

(b) A protective order rendered against a party in a suit for dissolution of marriage may not be appealed until the time the final decree of dissolution of the marriage becomes a final, appealable order.

(c) A protective order rendered against a party in a suit affecting the parent-child relationship may not be appealed until the time an order providing for support of the child or possession of or access to the child becomes a final, appealable order.

TEX. FAM. CODE ANN. § 81.009.

We decline to apply *Bilyeu* as it was decided prior to enactment of section 81.009. Regarding *Daniels*, we distinguish it from the circumstances of the case before us. In *Daniels*, Funes filed her application for a protective order in a separate cause number shortly before filing for divorce under a different cause number. After the protective order was issued, however, the parties continued to file motions and documents related to the divorce under the cause number for the protective order. *Daniels*, 2011 Tex. App. LEXIS 4642, at *4. Daniels began including both cause numbers on his motions and responses, but they were not always filed under the appropriate cause number. His counter-petition for divorce was filed under the cause number for the protective order. Even the trial court issued a temporary injunction related to the division of property in the divorce under the cause number for the protective order. The confusion continued in the motion for new trial and notice of appeal.

In concluding it had jurisdiction over Daniels's appeal from the protective order in connection with his appeal from the divorce proceeding, the Third Court of Appeals noted as follows:

6

we conclude that the trial court and the parties allowed the protective order proceeding and the divorce proceeding to become intertwined to such a degree that they must be treated as a single suit for purposes of family code section 81.009.

*Id.* at *5.

The scenario presented in *Daniels* is unique and attributable to the imprudent filings by both parties which confused even the trial court. In the facts before us, although there was a consolidated hearing, there was no overlapping of filings between the two separate cause numbers. Joshi filed an independent proceeding seeking a protective order under a different cause number than her petition for divorce. The clerk's record before us references only cause number 22-0119-POC1 and the documents included pertain only to the protective order. Unlike in *Daniels*, no filings from the divorce proceeding are intertwined with the protective order. Here, section 81.009(a) renders the protective order final and appealable. It was not rendered as part of Joshi's suit for dissolution of marriage. *See Phillips v. Phillips*, 651 S.W.3d 112, 115 n.1 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Watts v. Adviento*, No. 02-17-00424-CV, 2019 Tex. App. LEXIS 2478, at *4–5 (Tex. App.—Fort Worth March 28, 2019, no pet.) (mem. op.). *See also Davis v. Davis*, No. 06-07-00059-CV, 2007 Tex. App. LEXIS 4298, at *2 (Tex. App.—Texarkana June 1, 2007, no pet.) (mem. op.) (dismissing appeal of a protective order filed in a separate cause number than divorce proceeding for want of jurisdiction because notice of appeal was not filed until after the divorce proceeding concluded). We conclude the protective order is final and appealable and we have jurisdiction to entertain this appeal while the divorce proceeding remains pending. Patil's *Motion to Dismiss* is denied.

7

**MOTION TO PARTIALLY DISPOSE OF APPEAL**

Patil filed an unopposed motion under Rule 42.1(a)(1) of the Texas Rules of Appellate Procedure asserting he no longer wishes to pursue the first issue in his original brief challenging the legal and factual sufficiency of the evidence to support the trial court's finding that family violence occurred and is likely to occur in the future and desires only to proceed with his second and third issues. Because granting the requested relief will not prejudice Joshi, we grant the motion and affirm the portion of the trial court's corrected protective order finding family violence has occurred, was committed by Patil, and family violence committed by him is likely to occur in the future.

**ISSUE ONE (FORMERLY ISSUE TWO)—THE CHILD AS A PROTECTED PERSON**

Patil maintains the evidence is legally insufficient to support A.P.'s inclusion as a protected person in the protective order because there is no evidence of family violence inflicted against her. He contends his role as a good and present parent and the lack of any family violence against A.P. precludes inclusion of her as a protected person. We disagree.

A trial court's issuance of a protective order is reviewed under the same standards used in evaluating sufficiency of the evidence following a jury verdict. *Onkst v. Morgan*, No. 03-18-00367-CV, 2019 Tex. App. LEXIS 8203, at *2–3 (Tex. App.—Austin Sept. 11, 2019, pet. denied) (mem. op.). In reviewing legal sufficiency, we view the evidence in the light most favorable to the trial court's determination, indulging all reasonable inferences in its favor. *Id.* at *3. The trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony, and we will not substitute our judgment simply

8

because we might reach a different conclusion. *Id.* We must give deference to the fact finder who, having full opportunity to witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

Family violence is defined as an act by a family member against another family member "intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault or sexual assault . . . ." TEX. FAM. CODE ANN. § 71.004(1). Physical contact is not required to prove family violence has occurred. *Williams v. Bowles*, No. 01-13-00017-CV, 2014 Tex. App. LEXIS 1671, at *6 (Tex. App.—Houston [1st Dist.] Feb. 13, 2014, no pet.) (mem. op.).

Given Patil's abandonment of his issue challenging the protective order as to Joshi, there is no dispute he committed family violence and is likely to do so in the future. Joshi testified Patil's behavior was escalating and she detailed two separate incidents in which he dragged her out of the car and yelled at her while the child bore witness. The trial court heard Joshi recount how Patil drove away "fast" with A.P. in the car. She testified A.P. was having nightmares and arranged for her to begin counseling. When asked why she believed her daughter was scared, she answered without objection as follows: "I think it has affected her seeing her dad hit me. And, you know, this whole incident has really affected her deeply. She saw the whole thing. She remembers everything."

Although Joshi testified she "never thought [Patil] would hurt [A.P.]," she answered affirmatively when asked if the violence was getting progressively worse and if she

9

worried A.P. could possibly become a target of the violence. An applicant's family member who may be at risk of suffering family violence may be listed as a protected person even if no harm has been suffered yet. *Dolgener v. Dolgener*, 651 S.W.3d 242, 260 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Even though A.P. had not suffered direct harm from Patil's conduct, the trial court was authorized to include her in the protective order. *See id. See also Mahmoud v. Jackson*, No. 05-21-00302-CV, 2022 Tex. App. LEXIS 4135, at *13 (Tex. App.—Dallas June 16, 2022, no pet.) (mem. op.) (finding trial court had authority to include child as a protected person once it found the appellant had committed family violence even though applicant did not request inclusion); *Fontenot v. Fontenot*, 667 S.W.3d 894, 914 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (including child as a protected person after finding the appellant had committed family violence against applicant *or* the child in addition to finding family violence would likely occur in the future).

Based on the contradictory testimony and blame-shifting, the trial court was entitled to believe Joshi and disbelieve Patil. *Onkst*, 2019 Tex. App. LEXIS 8203, at *19. We find the evidence is legally sufficient to support inclusion of A.P. as a protected person. Patil's issue is overruled.

### ISSUE TWO (FORMERLY ISSUE THREE)—REMAND ON ATTORNEY'S FEES AND BIPP

By his original first issue, Patil had challenged both the legal and factual sufficiency of the evidence. By his motion to partially dispose of this appeal, which has been granted, he abandoned that issue. By his next issue regarding inclusion of A.P. as a protected person, he only challenged the legal sufficiency of the evidence. Thus, his request for a

remand on attorney's fees and the trial court's requirement he participate in BIPP if this Court had found factually insufficient evidence merits no consideration. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

The trial court's *Corrected Final Protective Order* is affirmed in its entirety.


Alex Yarbrough
Justice